UNITED STATES, Appellant

v

VICTOR E. VALLI, JR., Private, U. S. Marine Corps, Appellee

7 USCMA 60, 21 CMR 186

61

No. 7860

Decided May 11, 1956

*Commander Gay E. Milius, Jr.*, USNR, argued the cause for Appellant, United States.

*Captain Gerould M. Rumble, Jr.*, USMC, argued the cause for Appellee, Accused.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused, a Marine Corps private, was tried by a general court-martial and found guilty of wrongful destruction of property and larceny, in violation of Articles 109, Uniform Code of

Military Justice, 50 USC § 703, and 121, Uniform Code of Military Justice, 50 USC § 715, respectively. He was sentenced to dishonorable discharge, total forfeitures, and confinement for three years. The convening authority approved both findings and sentence, but a board of review in the office of The Judge Advocate General of the Navy reversed his conviction, holding that the depositions which constituted the principal basis of the corpus delicti were inadmissible. The Judge Advocate General of the Navy certified the case to this Court, requesting that we determine the issue of whether the depositions were properly received in evidence by the court-martial.

During the National Rifle and Pistol Matches at Camp Perry, Ohio, in September 1954, a shotgun belonging to Colonel John L. Thomas of the United States Army and ammunition belonging to the United States Government were stolen from the trunk of Colonel Thomas' car. The thief, in order to gain access to the trunk, broke one of the windows and then tore out the back seat. The Colonel reported the loss, and some six months later he was notified by the New York City Police that a weapon bearing the serial number of his gun had been located in a Brooklyn pawn shop. He identified the gun and paid $50.00 to redeem it. After an investigation, it was ascertained the pawn ticket carried the name of the accused. Subsequently he was interrogated at Camp Lejeune, where he gave a voluntary statement in which he admitted stealing the weapon.

The depositions consist of typewritten questions and answers and are identified only by a name at the top of the first page, so we must look elsewhere for the basic information supporting their use. According to a statement found in the Staff Judge Advocate's review, trial counsel, defense counsel, and a reporter, prior to trial, traveled to Fort Dix, New Jersey, and New York City, New York, where they took the oral depositions of Colonel Thomas, a New York City detective who located the shotgun, the pawnbroker, and his assistant. Speed was the reason assigned for the unusual and informal arrangements hereinafter detailed. In addition, there is a statement by trial counsel that one deposition was taken in July by trial and defense counsel. That is the extent of the information we find in the record touching on the authority for, and the manner of, taking the deposition. We find it incredible that so little was offered to justify the admission of this type of testimony, but in spite of the failure of the Government to erect a foundation, the depositions were received in evidence at the trial, because at the time they were offered, defense counsel stated he had no objection. While substantial compliance with the law ought to be required, counsel seems to have been content to overlook every procedural deficiency. Therefore, an attack on the admissibility of the depositions was not made until the case reached the board of review.

The Government argues that the decision of the board of review should be reversed on two grounds. First, it is asserted that the defense, by failing to object to the admission of the depositions, waived its right to raise the question on appeal. Second, it is contended that defense counsel, in effect, stipulated to the testimony of the prosecution witnesses. We shall treat the arguments in reverse order.

## II

We find little merit in the Government's contention that the depositions ▪ were admissible because defense counsel, in legal effect, stipulated to their use. In order to establish that theory, the Government must show an agreement between trial and defense counsel in which they mutually agreed to forego compliance with all provisions of the Code and the Manual. Even if that were an acceptable method of proceeding, there is neither a written stipulation fixing the conditions of admission, nor an oral agreement of like effect, and the negative conduct of defense counsel hardly establishes the formulation of any concrete arrangement. The statements of the Staff Judge Advocate and trial counsel are not evidence, but for the purpose of

this case, we are willing to accept their full import. If we do that, we are merely faced with a situation where trial and defense counsel traveled to the home cities of certain witnesses where questions were propounded and answered in the presence of a reporter. Thereafter, at trial, certain proposed exhibits containing typewritten questions and answers were produced by trial counsel with a statement that he desired to read the testimony of the named witnesses to the court-martial members. Counsel for the defense offered no objection to the procedure, but he did register specific objections to certain portions of some answers, which he contended were hearsay. From those facts and circumstances we are asked by the Government to construct a stipulation. That we cannot do, for defense counsel's conduct amounted, at most, to a waiver. Nothing counsel said or did can be fairly construed to indicate an intent on his part or on the part of the accused to stipulate either to the taking of depositions or to the testimony contained therein. A stipulation must contain some recognizable conditions, and while certainty and definiteness in all respects are not demanded before an agreement can be reached there must be a meeting of the minds on some of the terms. Here it would be impossible to fix the limits of any agreement.

In United States v Carter, 1 USCMA 108, 113, 2 CMR 14, this Court, when speaking of the facts and circumstances necessary to establish a stipulation, applied this yardstick:

"Under certain circumstances, an appellate court might conclude that the acts and statements of the parties during the trial amount, in law, to a stipulation. While no particular language may be necessary to establish a stipulation, it should appear in the record that the parties clearly understood they were stipulating to facts and the language in this case does not show that such was the understanding."

When we measure the facts of this case by that rule, we find they fall far short of measuring up to the standards we

have set. To hold otherwise would be to imply an agreement where none was contemplated by the interested parties, and where their acts and conduct are not susceptible of such a construction.

III

The question of waiver argued by the Government presents us with the real problem in this case. █ Undoubtedly defense counsel, by failing to object, made a conscious and knowing waiver of certain procedural requirements. Particularly is that true of the three mentioned in paragraph 145a of the Manual for Courts-Martial, United States, 1951, pages 270–271, namely, that the depositions were not taken on reasonable notice, that they were not taken before a proper officer, or that the deponents were not shown to be unavailable as witnesses. However, the question which faces us is not confined to the waiver of some requirements. We are here confronted with the problem of whether an accused's counsel can waive every statutory condition and restriction imposed by the Code.

The taking of a deposition by the prosecution is not permitted in most American civilian jurisdictions, but, because of █ the necessities of the services, military law has permitted their use in military courts. We have upheld the right of Congress to authorize their use, but we have appreciated that for the most part they are tools for the prosecution which cut deeply into the privileges of an accused, and we have, therefore, demanded strict compliance with the procedural requirements before permitting their use. Furthermore, we are convinced that they should only be used when the Government cannot reasonably have the witnesses present at the time of trial. As a general proposition, if the costs of having a witness testify in court are substantially the same as, or less than, the expense of taking a deposition, and the witness is amenable to process, it would be much better practice to have him present at the trial.

With the foregoing general observa-

tions, we pass on to consider the particular conditions and restrictions imposed by law. Article 49, Uniform Code of Military Justice, 50 USC § 624, which authorizes the taking of depositions, provides, in part, as follows:

"(a) At any time after charges have been signed as provided in article 30, any party may take oral or written depositions unless an authority competent to convene a court-martial for the trial of such charges forbids it for good cause. If a deposition is to be taken before charges are referred for trial, such an authority may designate officers to represent the prosecution and the defense and may authorize such officers to take the deposition of any witness.

. . . . . .

"(c) Depositions may be taken before and authenticated by any military or civil officer authorized by the laws of the United States or by the laws of the place where the deposition is taken to administer oaths."

That Article is amplified by paragraph 117g of the Manual, pages 196–197, which deals specifically with depositions taken on oral examination. It sets out the following conditions and requirements:

"If depositions on oral examination are to be taken before charges are referred for trial, the authority competent to convene a court for the trial of the charges may direct officers, preferably the trial counsel and defense counsel of an existing court, or an assistant trial counsel and assistant defense counsel, if any, to proceed to the residence of the witness, or other designated place, to take the deposition.

"If, after charges are referred for trial, depositions are to be taken on oral examination rather than on written interrogatories, each party concerned will indicate in a separate letter or memorandum the reasons for the deposition and the points desired to be covered in the oral examination of the witness. Subsequent to submission to and inspection by opposing counsel, the papers will be submitted to the convening authority or to the law officer (president of a special court-martial) depending upon whether the court is in session. If submitted to the law officer (president of a special court-martial), he will examine the papers and approve the taking of the deposition or refer the papers to the convening authority if it is deemed the deposition should be forbidden for good cause.

"Upon receipt of the approved letters or memoranda, the commanding officer or other person to whom the papers are sent, as contemplated in subparagraph c above, will, whenever practicable, in addition to designating a person authorized by law to administer oaths to take the deposition, detail officers, preferably officers experienced in the duties of trial counsel and defense counsel, respectively, to represent both sides in propounding the oral questions which upon being propounded will be reduced to writing as will the answers thereto. The rules as to representation by individual counsel (48a, b) are applicable. See 145a as to objections."

Other portions of the Manual are also pertinent, for paragraph 114, page 187, directs that witnesses who testify by deposition be sworn, and prescribes the form of oath to be administered. Paragraph 117e, page 196, provides that the deposition should be read by or to the witness after transcription, and that the witness must either sign the completed deposition, or the person who took the deposition must furnish a certified explanation of the omission.

A cursory reading of the provisions mentioned above and a reference to the scanty information contained in this record, will disclose that it is deficient in the following respects: There was no order or commission issued to take the depositions; the identity of the officer or officers before whom the depositions were taken is not disclosed; the form of oath used, if any, is not revealed; if an oath was given, the identity of the person administering it is not established; the reporter is not shown to have been sworn; the time

or place of the hearing is not shown; the transcribed testimony was not read by the witnesses and no opportunity was afforded to make any corrections; the depositions were not signed by the deponents or sworn to as being true and correct; the reason for the lack of signatures is not disclosed, except, possibly, haste; there is no certificate by the reporter concerning the accuracy of his transcription; and there is no verification of the fact that the testimony received in evidence is the testimony given by the witnesses.

In enumerating the deficiencies in the record, we have not overlooked the provisions requiring a reference to the convening authority. However, we prefer to deal with it more fully. It is difficult to discuss this shortcoming because the record is silent as to the date the depositions were taken. From what we can piece together, we conclude they were obtained shortly before trial. If they were taken after the charges were referred for trial, there was no compliance with the requirement that each party should indicate in a separate letter or memorandum the reasons for the depositions and the points to be covered. So far as we can tell, no papers were ever forwarded to the convening authority for his consideration. That step in the proceedings is particularly important for, in this instance, defense counsel could well have requested the presence of the witnesses and, had the convening authority concurred, that would have obviated the necessity of taking depositions, as the witnesses were amenable to process. Convening authorities may exercise discretion in ordering the taking of depositions, and an accused ought to be afforded a chance to oppose the Government's request for such testimony. Certainly, a trip for counsel is not as important to a fair trial as is the production of live witnesses where practicable.

The right to take and use the deposition of a witness is statutory, and the procedure prescribed for its taking must be substantially followed in order to make the deposition competent and admissible. In United States v Miller,

7 USCMA 23, 21 CMR 149, we stated that depositions were a substitute method for presenting facts to the detriment of the accused, and that we were not willing to permit halfway measures immediately before trial to be made the basis for the use of that type of evidence. The same reasoning can be applied here, and this record may be held up as a model of what should not be done in the interest of speed.

We are not reluctant to impose a waiver, and we have done so in many fields. However, we have not gone so far as to permit a waiver to equal total abandonment. If all we had in this instance was the admission of incompetent evidence, we would have little hesitancy in affirming the conviction. But it is too much to expect us to hold that a failure to object can be a curative for such precedural irregularities as we find presented to us in the instant case.

We have held that the right of confrontation is satisfied, in the case of a deposition, by according to an accused the right of full cross-examination by qualified counsel. United States v Sutton, 3 USCMA 220, 11 CMR 220. However, as previously stated, before an accused is denied the privilege of personal confrontation at trial, the record should show that he was represented by counsel who was afforded an opportunity to protest the taking of the depositions to the law officer or the convening authority. In this instance we do not know whether an order was issued directing the taking of these depositions, who issued the order, whether counsel for the accused was consulted in reference to his desires, or whether he did protest. All we can glean from the record is that he participated in whatever sort of hearing was held.

We could take the time to consider the detrimental effect of each procedural error, and discuss the possibility of a conscious waiver of each one, but little good would be served. We have shown enough to justify our conclusion that a failure to object at trial cannot be raised to the level of a stipulation, or

to a conscious waiver of the combined deficiencies shown by this record. Perhaps our theory could be likened to the doctrine of cumulative error. One or two errors, or maybe more, might be cured by a single failure to object, but as the number increases, the total becomes so large that they should not all be remedied by the one omission. Particularly is that true if there is not a clear showing that the defense understood it was waiving a number of important legal safeguards.

There is some contention that this case can be decided on the presumption of regularity, but again the base is inadequate. It is impossible to infer, for example, that counsel acted properly in the taking of these purported depositions, or that these witnesses were sworn to a proper oath, or that other duties were properly carried out, in the absence of any showing that certain persons were authorized or directed to act, by a competent authority, in the taking of these depositions. Conversely, in the absence of any showing that these depositions were taken before anyone acting as a public officer, it is impossible to infer that that person performed his duties properly. Common sense dictates that the mere appearance of an attorney purporting to represent the accused at the taking of a deposition should not be regarded as evidence that all statutory requirements have been fulfilled.

The certified question must be answered in the negative. The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

I disagree with several statements in the principal opinion regarding the Government's right to take and use depositions without the presence or express consent of the accused. See my dissenting opinion in United States v Sutton, 3 USCMA 220, 11 CMR 220. However, I concur in the result on the ground that application of the doctrine of waiver in this case would result in a "manifest miscarriage of justice." United States v Fisher, 4 USCMA 152, 15 CMR 152.

Judge FERGUSON did not participate in the decision in this case.