UNITED STATES, Appellee

v

JAMES CIARLETTA, Private First Class, and ANTHONY MARTIN,
Private First Class, U. S. Marine Corps, Appellants

7 USCMA 606, 23 CMR 70

No. 8899

Decided February 21, 1957

*Commander Earl C. Collins,* USN, argued the cause for Appellants, Accused. With him on the brief was *Major Gerould M. Rumble, Jr.,* USMC.

*Second Lieutenant Daniel P. Reardon, Jr.,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Commander Guilbert W. Martin,* USN, and *Commander Edmund Burke, Jr.,* USN.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused were tried before a general court-martial for violations of Article 134, Uniform Code of Military Justice, 10 USC § 934. The single specification against Martin alleged wrongful use of marihuana, while the two specifications against Ciarletta alleged wrongful use and wrongful possession of the same drug. Both accused pleaded not guilty, but to no avail, for they were found guilty as charged. Martin was sentenced to a bad-conduct discharge, total forfeitures, reduction to private, and confinement for one year. Ciarletta was sentenced to bad-conduct discharge, total forfeitures, reduction to private and confinement for eighteen months. The convening authority reduced the terms of confinement to eight and eleven months, respectively, but otherwise approved the findings and the sentence, and the board of review thereafter affirmed. We granted a petition for review to determine whether the deposition of one Dooley was erroneously admitted into evidence at trial.

On December 4, 1955, the accused Ciarletta and Private First Class Robert M. Dooley, who was then in the process of being discharged from the Service, drove to Los Angeles, California, in Ciarletta's automobile and purchased a substantial quantity of marihuana with money supplied by accused Martin. Both Ciarletta and Dooley smoked some of the drug that evening, and Martin shared their experience the following day. Subsequently the car was searched and the remaining marihuana was seized. A few days later, Martin and Ciarletta were interrogated by criminal investigation agents of the Marine Corps. After proper warning, both voluntarily confessed to the offenses of which they were subsequently convicted.

As mentioned earlier, Private First Class Dooley was in the process of being discharged at the time when these offenses occurred. Accordingly, on January 10, 1956, his deposition, which contains a full statement of this incident, was taken at the behest of the Government. Dooley was discharged on January 17th, and this case was tried on February 2, 1956. At the trial, the prosecution offered his deposition in evidence, and the law officer ruled it to be admissible over defense counsel's objections. It only remains to be said that the deposition supplies the corpus delicti as to the use of marihuana and, as such, was indispensable to a successful prosecution for those offenses.

On appeal, defense counsel renew the claim that the deposition should not have been received in evidence. First they argue that the inherent right of the accused to confrontation by the witness at trial was denied them when presentation of evidence by deposition was not reasonably necessary, and that the Government procured the absence of the deponent without justification by administratively discharging him. Next they allege that there were certain procedural irregularities in the taking of the deposition. Finally they advance the contention that the deposition was received in evidence without the statutory foundation for its admission being laid. We shall discuss these arguments separately and recount such additional facts as are necessary to a proper solution of each defense assertion.

II

Before taking up the first granted issue, we turn momentarily to defense counsel's preliminary claim that accused were prejudiced because the court did not have the opportunity to observe the demeanor of Dooley. The argument runs to the effect that he was of unsavory character, that his testimony was not credible, and that the court-martial

could properly weigh his testimony only if given the opportunity to observe him from the witness stand. A similar argument was made and overruled by us in United States v Parrish, 7 USCMA 337, 22 CMR 127. In every case when depositions are used, the court-martial is denied the opportunity of visually observing the witness. As a general proposition, demeanor is important to credibility, and credibility is important to the court when there is a dispute in the testimony, but in this instance the contention lacks its usual force, for the court-martial was furnished all the discrediting evidence against Dooley, and his testimony was corroborated in every detail by accused's voluntary confessions. His veracity was a subject which permitted little exploitation by the accused, for theirs was measured by the same yardstick. If he falsified, they did not tell the truth; and if he truthfully related the facts, so did they. However, assuming without deciding that a personal appearance by Dooley would have inured in some small degree to the benefit of accused, that does not take this case out from under the codal provision and our decisions which hold that depositions may be used.

### III

Accused bottom their next contention on the allegation that the Government discharged the witness █ Dooley to prevent his attendance at trial. The facts are that on December 5, 1955, the deponent Dooley, who had previously been selected to be discharged, took his final-type physical examination. On that date, he became involved in this criminal transaction, was arrested along with the accused for the marihuana violations, and confessed to the crimes as did they. He, however, elected to become a prosecution witness and an informer for the Criminal Investigation Division, so he was released from confinement. On January 10, 1956, his oral deposition was taken, and in it he furnished incriminating evidence against both accused. Charges were never preferred against him, and on January 17, 1956, he was discharged. While undoubtedly the Government con-

cluded not to prosecute Dooley, the decision to discharge him had been made before these offenses were committed, and no acceleration of the discharge is suggested by accused or the record of trial.

Defense counsel acknowledge that in military law there is no absolute right to the physical presence of witnesses at trial, where good cause for their absence exists, and that in appropriate cases cross-examination of a deponent sufficiently satisfies the right of confrontation. United States v Sutton, 3 USCMA 220, 11 CMR 220. They urge, however, that this is not such a case because they say the Government deliberately and unreasonably made Dooley unavailable as a witness by the affirmative act of giving him a discharge to which he had no right, when he could easily have been retained in the Service and, hence, present to testify at the trial in person. Obviously, the Government should give consideration to the rights of those charged with offenses, but imposition of that duty must be kept within reasonable limits. Here the record does not show that the convening authority of this court-martial had any power to retain Dooley or that he was ever as much as informed that the accused desired Dooley's presence at trial. For aught that he knew, they could have been only too glad to have Dooley unavailable. As a matter of fact, the record discloses that Dooley was a member of a senior command. This command had independently determined to release him because of his inferior intelligence and his past record of offenses prior to the crimes of December 5, 1955, which are in question—as we have mentioned, he was off duty on that day in order to take his "physical checking out."

Defense counsel were notified of the taking of the deposition and the reason therefor before Dooley was discharged. They appeared with their clients, participated fully in the hearing, yet rendered no objection to the taking of the testimony at the time it was given. They did not then either claim or offer to prove that Dooley's discharge was being accomplished for the purpose of preventing his personal appearance

at the trial. But more consequential to this issue is the fact that they never made any request to have him retained. It is one thing to charge the Government with bad faith when it ignores the rights of an accused, but it is quite difficult to support that contention when an accused sleeps on his rights, fails to make a timely request for relief, and gives no hint of dissatisfaction with the procedure adopted. Had counsel for the accused wanted to prevent the preservation of the testimony, the least they should have done was to ask military authorities to delay the administrative discharge or forbid the taking of the deposition. For us to hold that Dooley was discharged only to prejudice the accused would be in conflict with any fair analysis and interpretation of this record, and we therefore reject this contention.

## IV

Next we consider the defense assertion that irregularities in the taking of the deposition should preclude its admission in evidence. Appellate defense counsel allege that the record does not show that the convening authority authorized the taking of the deposition; that either accused was represented at the deposition by counsel of his choice; that counsel who represented the accused at the deposition were apprised of the charges upon which they were to be tried; that the officer before whom the deposition was taken was properly appointed or authorized to take it; that a reporter was present, or, if so, that he was sworn; that the deponent was given a proper oath; or that he had read and corrected the deposition. We will discuss only the most important alleged irregularities for we do not find, as requested by counsel, that the cumulation of irregularities in the taking of the deposition is so great as not to permit a waiver by counsel certified to try cases before general courts-martial. Cf. United States v Valli, 7 USCMA 60, 21 CMR 186.

It is argued that authorization by the convening authority for the taking of a deposition is essential to its admissibility, else defense counsel are precluded from questioning the necessity

and propriety of substituting deposition testimony for the presence of the witness at trial. Counsel apparently misread the Code, for Article 49, 10 USC § 849, does not require the prior approval of a convening authority to validate the taking of the testimony. That functionary should not be ignored, but his action is negative rather than positive. In United States v Valli, supra, we noted the importance of requiring a reference to the convening authority for his consideration wherever possible before a deposition be taken, saying:

". . . That step in the proceedings is particularly important for, in this instance, defense counsel could well have requested the presence of the witnesses and, had the convening authority concurred, that would have obviated the necessity of taking depositions, as the witnesses were amenable to process. Convening authorities may exercise discretion in ordering the taking of depositions, and an accused ought to be afforded a chance to oppose the Government's request for such testimony."

The initiatory step in taking a deposition is notification to counsel of the time, place of taking, and other details, and here those requirements were apparently met. It is to be noted, therefore, that counsel for accused had the chance to oppose the taking of the deposition and to request the convening authority to prevent the prosecution from proceeding in that manner, yet they failed to do so and did not assign this claimed irregularity as an error until they reached this Court. It is beyond cavil that the sole reason for taking the deposition was because Dooley was being discharged and would not be present at trial, which fact was known by defense counsel, yet they did not seek to have the appropriate commander prohibit the hearing. If there was good cause for not proceeding by deposition, defense counsel could have notified the convening authority in ample time to permit him to consider the objection. Had he ruled improperly, the error would have been preserved for review on appeal, but in the light of this record we do not have this issue properly before use. In this connection, it

is worth·repeating that the prior consent of the convening authority to the taking of a deposition is not essential, but he may forbid either party from so doing for good cause. Most assuredly, it is preferable that he consider the matter before the testimony is recorded, but it is not essential to validity that permission be obtained from him in advance.

The next assigned irregularity is not supported by the record. In United States v Miller, 7 USCMA 23, 21 CMR 149, we indicated that where an accused did not retain civilian counsel, or object to the counsel appointed, he may be deemed to have concurred in that appointment. There the accused did not know counsel had been appointed, hence we found he had no opportunity to object. Here, however, we have just the reverse—both accused, with full knowledge of the identity of counsel detailed to represent them, acquiesced in the appointment, not only at the taking of the deposition, but throughout the trial. We are not inclined to require the record to show formal approval of counsel by accused when it bespeaks their wholehearted satisfaction—at least until after conviction. Hence we hold these accused were not deprived of counsel of their choice at the time when the deposition was taken.

The contention that counsel representing the accused at the deposition were not prepared to repre- sent them adequately is devoid of merit. The accused were informed of the nature of the offense at the time they confessed. That was some thirty days prior to the taking of the deposition. They were told of the charges alleged five days prior to the hearing, and the pretrial investigation was held on the same date. All three participants in the crime had confessed in writing, and it is preposterous to assume that, even though counsel had just been recently appointed, they would be unfamiliar with the circumstances surrounding the alleged offenses and any facts which would cast doubt on Dooley's credibility as a witness. If they were not fully informed, they were negligent in their

**612**

representation, for neither asked for a continuance. However, we need not be concerned on that score, for their cross-examination indicates that they were familiar with the issues.

The qualifications of the officer taking the deposition are questioned, but only on the basis that the rec- ord does not show his appointment or authorization. No argument is made that the deposing officer did not have the statutory qualifications or that he conducted the hearing improperly, and a glance at the appointing order for the court-martial discloses that he was, at the time of the deposition, certified and serving as law officer for a general court-martial. In this case, where the competence of the officer before whom the deposition was taken is not challenged, and improper conduct is not alleged, but only lack of formal appointment is claimed, the provisions of the Manual for Courts-Martial, United States, 1951, paragraph 145a, page 270, are especially appropriate. It provides in pertinent part:

". . . A failure to object to the introduction of a deposition on the ground that it was not taken on reasonable notice or before a proper officer . . . may be regarded as a waiver of that objection."

No one questioned the propriety of of the deposition procedure on this ground until the case reached this level. No objection was made at a time when this alleged formal deficiency could have been easily corrected, and in accordance with the provisions of the Manual we hold that counsel waived any irregularity on this asserted ground.

It is also said the record does not show that there was a reporter present at the deposition, or that he was sworn. The record speaks to the contrary, however, for the testimony of the assistant trial counsel in laying a foundation for the admission of the deposition establishes that "the Reporter, Corporal Ralph W. Watkins was present," and, although there is no indication that the reporter was sworn, the deposition was otherwise authenticated, as we shall see.

As for the claim that the deponent was not shown to have been sworn, the deposition itself shows in two separate places that Dooley was "duly sworn" by the deposing officer. And while the record does not show Dooley read the deposition, he subscribed to it, and his answers therein were given under oath. Further, the deposing officer certified that the deponent "gave the foregoing answers to the several interrogatories and subscribed the . . . deposition." Clearly the deposition was authenticated not only by the deponent, but by the officer before whom it was taken as well.

While counsel for defense rely on our holding in United States v Valli, supra, to sustain their position that many irregularities require rejection of a deposition, there is no similarity between the two cases. Here we do not have a record replete with deficiencies, as was the case in that instance. Rather than equaling "total abandonment" of all procedural requirements, a failure to object here only bars complaint about a few possible but highly technical errors by the Government which could easily have been corrected if defense counsel had objected at the proper time. We are constrained to hold, therefore, that the irregularities in the taking of the deposition were immaterial or were waived by failure to assert timely objection.

V

Finally we move on to dispose of the contention that the deposition should not have been admitted because it lacked the requisite statutory foundation. Petitioners argue that the law officer erred in his determination that the requirements set forth in Article 49 (d), Uniform Code of Military Justice, 10 USC § 849, as conditions precedent to the use of depositions, had been satisfied. That Article of the Code provides:

"A duly authenticated deposition taken upon a reasonable notice to the other parties, so far as otherwise admissible under the rules of evidence, may be read in evidence before any military court or commission in any case not capital, or in any pro-ceeding before a court of inquiry or military board, if it appears—

"(1) that the witness resides or is beyond the State, Territory, Commonwealth, or District of Columbia in which the court, . . . is ordered to sit, or beyond 100 miles from the place of trial or hearing; . . ."

Our problem, therefore, becomes one of determining whether there was sufficient evidence upon which the law officer could find that Dooley's residence, at the time of trial, was outside of California, or more than one hundred miles from the base at El Toro—not that he must so find, but merely whether there was sufficient evidence for him to come to that conclusion, for we cannot overturn his ruling unless it is without substantial factual support in the record.

While the showing made by the prosecution was not of the best, we believe that within the operation of a reasonable mind the conclusion could be reached that on the day of trial the witness' residence was far from the situs of the hearing. The following evidence leads us to that conclusion. A unit diary extract was introduced, which established that Dooley was released from active duty on January 17, 1956, and assigned to the First Marine Corps Reserve Recruit District. His military status was, therefore, changed from active duty to reserve duty. Common sense dictates that the assignment upon separation would be made to a reserve unit convenient to the dischargee's permanent residence, and here we find uncontradicted testimony that one leaving the Marine Corps under similar circumstances is assigned to the District nearest to the home address he gives upon separation. While Dooley was not under obligation or orders to report to the assigned district, there was some logical reason for placing him in that command. Moreover, he was paid mileage to New York City, the place where he enlisted, and it is a reasonable inference that he enlisted at a place near his home. These matters

tie in with another item upon which the law officer could rely to make his determination, for he could take judicial notice of the fact that "the First Marine Corps Ready Reserve Division includes in its geographic area, New York City." Thus there was evidence before him that the deponent had severed his status with the active Marine Corps some two weeks prior to trial; that his original entry into the Service was at a place located on the Eastern shore of the United States; that on January 17, 1956, he was assigned to a unit which geographically encompassed that area; that his assignment was based on his representation that he resided in that locality; and that he had been given the funds to reach his claimed residence. It is, therefore, reasonable and logical to assume that one who is separated from the Service returns to his home when he has the funds and sufficient time has elapsed to permit the journey.

Defense counsel do not deny that Dooley may well have been in New York City at the time of trial— their sole contention is that the prosecution did not prove that he was. The short answer to this argument is that the prosecution is not required to prove his precise whereabouts the day of the hearing, for under Article 49 (d) (1) of the Code, proof of his residence, if it is the requisite distance away, is sufficient to render the deposition admissible. So there will be no misunderstanding, we are only considering residence as it may govern those witnesses who are not in the Service. A man in the armed forces may be readily available for appearance at trial anywhere American service men are stationed, regardless of his actual residence, providing he is on station. In this instance, however, the witness had returned to civilian life, and we are sure that of the many million men and women who have served in the military forces since the commencement of World War II, only a very limited number have not returned to their homes upon being relieved from active duty. Upon the facts, the law officer could consider and with no evidence to the contrary, we are satisfied that reasonable men could determine that at the time of accused's trial Dooley resided, and was, in fact, beyond the borders of the State of California. Accordingly, we conclude that the law officer was entitled to find that a proper foundation had been laid for the admission of the deposition.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.