UNITED STATES, Appellee

v

ROBERT A. GAINES, Private First Class,
U. S. Army, Appellant

20 USCMA 557, 43 CMR 397

No. 23,570

May 14, 1971

*Captain Brian B. McMenamin* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Major Alan W. Cook.*

*Captain Gordon F. Bailey, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain John C. Lenahan.*

## Opinion of the Court

FERGUSON, Senior Judge:

The charged offenses of unpremeditated murder and assault with a dangerous weapon whereby grievous bodily harm was intentionally inflicted, in violation of Articles 118 and 128, Uniform Code of Military Justice, 10 USC §§ 918 and 928, respectively, allegedly occurred in a barracks at Cam Ranh Bay, Republic of Vietnam, on June 28, 1969.[1] The admission into evidence of the depositions of prosecution witness McIntyre and defense witness Odom serve as the basis for the issues before us.

Appellate defense counsel contend that the accused was prejudiced by the admission of McIntyre's deposition on the ground that it deprived the accused of his right to *confront* this principal witness for the prosecution *before the triers of fact.* The deposition itself, they allege, being replete with numerous and substantial defects, as well as contradictory and unintelligible statements, was inadmissible on its face and thus highly prejudicial to the accused. With regard to the deposition of de-

fense witness Odom, counsel argue, it was utilized at trial only after a request for Odom's presence at trial was denied by the convening authority. Defense counsel was thus left with no choice but to accept this "half-loaf that it at least represented."

Government appellate counsel aver that the deposition of McIntyre was admissible under Article 49, Code, supra, 10 USC § 849, because the witness was not " 'reasonably available' " at the time of trial, he having been returned to the United States prior thereto for discharge from the service. Under these circumstances, the right of confrontation is satisfied. Failure of defense counsel at trial to request the *compulsory attendance* of McIntyre is viewed by the Government as a waiver of any objection to the admissibility of the deposition testimony and precludes consideration, on appeal, of the deponent's availability to testify at trial. With regard to any inconsistencies in the deposition and other alleged imperfections, counsel contend that these matters were either fully developed at trial or were waived by failure of defense counsel to note objection thereto

---

[1] Trial was held in Vietnam on September 22, 23, and October 13, 1969.

at that time. The use of the deposition of defense witness Odom was also appropriate, according to the Government, in light of the fact that he too was then not reasonably available and because the defense itself instigated the taking of this witness' testimony by deposition. Since the request for Odom's presence was not renewed before the trial judge, the issue of his absence cannot be raised on appeal for the first time.

At our request, appellate counsel submitted the following stipulation of fact with reference to the status of the deponents McIntyre and Odom at the time of trial:

"1. On 27 August 1969, deponent McIntyre arrived in the United States from Viet Nam. Although his ETS was 21 November 1969, he was released from active duty and transferred to USAR Control Group on 27 August 1969 because he had less than three months to serve.

"2. Deponent Odom's records show him as a casual from Viet Nam as of 26 August 1969 and on 14 October 1969 he was assigned to Fort Devens, Massachusetts. Specialist Five Odom reenlisted for three years on 31 January 1969 and his current ETS date is 30 January 1972."

Questions concerning the utilization of depositions in trials by courts-martial are not new to this Court. See generally, Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Depositions and Former Testimony, pages 283–291. In the recent case of United States v Davis, 19 USCMA 217, 224, 41 CMR 217 (1970),[2] we reviewed the law in this area and held that:

". . .[W]ith regard to military witnesses, the right of confrontation as embodied in military due process requires that actual unavailability be established before a deposition of a serviceman is admitted into evidence." [Emphasis supplied.]

And in United States v Hodge, 20 USCMA 412, 43 CMR 252 (1971), where, as here, trial was held in Vietnam and the witness was then located in the United States, the majority of this Court stated at page 413:

". . . For the purpose of this appeal, we assume, without deciding, that a witness physically in the United States may be subpoenaed to attend and testify at a court-martial convened in a foreign country. See Article 47, Code, supra, 10 USC § 847; Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 115. Cf. Rule 17 (e), Federal Rules of Criminal Procedure; Blackmer v United States, 284 US 421, 76 L Ed 375, 52 S Ct 252 (1932). We also assume, without deciding, that attending a trial in a combat zone presents such grave danger to a civilian witness that we can properly compare his situation to one who, because of illness or disease, would be in grave danger if compelled to attend and testify, but because the Government procured the witness' departure from Vietnam and effected his discharge from the service before the expiration of enlistment, it is prevented from asserting the witness' inability to attend as justification for use of his deposition. Cf. United States v Ciarletta, 7 USCMA 606, 610–611, 23 CMR 70 (1957); Reynolds v United States, 98 US 145, 158, 25 L Ed 244 (1879)." [Emphasis supplied.]

In the case at bar, the departure of both McIntyre and Odom was effectuated by the Government and for its convenience. McIntyre was returned to the United States and released from active duty prior to the expiration of his enlistment, while Odom was routinely returned to this country and assigned to another military unit. Each was, at time of trial, subject to military orders —Odom as an active duty serviceman and McIntyre as a member of a USAR Control Group. Under these circum-

---

[2] In Davis, we discussed at length the right of an accused to confront the witnesses against him before the court members. A careful reading of that opinion is recommended.

stances, it is arguable that the Government "is prevented from asserting the witness' inability to attend as justification for use of his deposition." United States v Hodge, supra, at page 413. See also United States v Davis, supra, and United States v Troutman, No. 420189 (ACMR March 19, 1970). Cf. United States v Vicencio, No. 421749 (ACMR March 26, 1971).

Can it be said then that defense counsel waived the presence of the witnesses? We think not. At the outset of trial, defense counsel moved for a change of venue to the United States because, as he stated:

". . . [M]any of the witnesses, almost all of the pertinent witnesses in this case, have been sent to the United States or are now presently in the United States. Gone are witnesses who testified in the Article 32 —a man named Ferguson, Prestridge, Bonilla-Colon, Ward, Case, Hicks, and McIntyre. While these are mainly prosecution witnesses, they are not here. Again a man named Odom; the accused's mother; Sergeant First Class Walker; Captain Stone; First Sergeant Kinnard; Spec Five Bland; the last three being possible extenuation and mitigation witnesses, are also in the United States. . . . I think, sir, because of the absence of almost all of the material witnesses in this case that the only proper venue for this trial would be the United States where the court can see the live witnesses."

As defense counsel further contended:

". . . While the prosecution has several live witnesses, I believe that these witnesses are testifying to matters along with the facts—circumstantial evidence—but the real meat of the offense is going to be done on paper."

The prosecution opposed the motion on the ground that in the interest of discipline, "it is a rather drastic matter to take the jurisdiction away from this command if there is no other showing except lack of witnesses"; that it was willing to stipulate to the expected testimony of the accused's mother and a Sergeant First Class Jackson; and that a change of venue "would be very costly to the Government" and result in further delay in the trial of the case. While acknowledging that it intended to present the testimony of witnesses McIntyre and Case by deposition, the Government argued that the case should proceed to trial at the place where convened. Insofar as defense witness Odom was concerned, trial counsel informed the military judge that a deposition was taken from Odom at the request of the defense.

In denying the motion for a change of venue, the military judge stated:

"Certainly there are administrative problems in a change of venue, in that this convening authority might even have to send the members and he might have to even retain jurisdiction. He probably couldn't be assured that there would be a trial if he referred it to some other commander, because that commander in the States, of course, would make up his own mind and might decide against trial. I don't know, but your basis is not because the accused couldn't otherwise receive a fair trial in this command?

"DC: No, sir, it's not."

It is patently obvious, from the contents of his argument for a change of venue, that defense counsel ■ was objecting to going to trial without the personal presence of a number of prosecution and defense witnesses, including McIntyre and Odom. His motion was, in effect, a renewal of any and all previous requests for the attendance of witnesses. The military judge's denial of the motion was a denial of that request. Cf. United States v Davis, supra; United States v Thornton, 8 USCMA 446, 24 CMR 256 (1957).

When McIntyre's deposition was initially considered in the Article 39(a) session, following denial of the motion for a change of venue, defense counsel objected to its admission in evidence. He contended that the deposition contained numerous errors, inaccuracies

and procedural defects, and was inadmissible on its face. Citing United States v Valli, 7 USCMA 60, 21 CMR 186 (1956), "in which eleven procedural defects were noted," defense counsel asserted that "seven of these procedural defects are again present in the McIntyre deposition." Specifically, counsel averred:

". . . There is no showing of the form of the oath; the identity of anyone who administered the oath; the witness has apparently not read and had no opportunity to correct it; it's not signed by the deponent or sworn to as being true by him; the reason for lack of signature is not disclosed and there is no certification by the reporter and no verification by the deposition officer as to the truth of the matters or the accuracy of the matters contained in the deposition."

With regard to the latter defect, counsel explained that he meant that "the deposition officer has not certified the accuracy of the deposition." Counsel then proceeded to attack specific alleged errors in the deposition itself. When the military judge asked trial counsel if he intended to request a continuance to call the witness, in the event the deposition was found inadmissible, the latter replied that he would. Thirteen pages of the record were consumed in discussing defense counsel's specific objections and another five pages were required when defense counsel noted the particular portions of McIntyre's Article 32 testimony, which he intended to introduce as matter in impeachment of the deposition.

When Captain Brown, the deposition officer, was called to certify as to the correctness of the deposition, the following colloquy took place:

"Q [TC]. I show you Prosecution Exhibit 2 [McIntyre's deposition] for identification. Have you read this previously?

"(TC handed the document to the witness)
"A. Yes, I have.

"Q. And is this *in substance* the testimony and the answers and the responses that were—that did occur on the 22d of August, 1969?
"A. It is.

"Q. And do you so certify this as being correct?
"A. I so certify." [Emphasis supplied.]

At that point the military judge noted that Captain Brown had been detailed as *defense counsel* for the court-martial to which the accused's case had been referred for trial. Brown asserted that at that time he had not acted for the defense and informed the judge that a Captain Berry had been appointed to defend the accused at the deposition hearing on August 22d. The judge expressed concern over when Captain Berry was appointed and whether he was fully prepared, since the amendment to the court-martial convening orders appointing Captain Berry as defense counsel in place of Captain Brown was dated August 23d, the following day. The deposition officer testified that "Captain Brick [trial counsel] notified him, but I notice that he certainly had time enough to—there weren't any motions or anything made at the time of the deposition." Previously, in discussing the McIntyre deposition and that of prosecution witness Case, defense counsel, Captain Tinney, had informed the court that Captain Berry "later became unavailable" and the accused requested he be represented at trial by Captain Tinney. This change was accomplished by Court-Martial Convening Order Number 14, dated September 21, 1969.

The testimony of McIntyre, by way of deposition, formed a principal part of the Government's case against the accused. The military judge recognized this fact when he told counsel, "[t]he thing that bothers me even more, it appears that this witness is a very important witness." Trial counsel's response to this statement was "Yes, sir." Under the circumstances of this case—the Government having procured McIntyre's departure from Vietnam and effected his discharge from the service before the expiration of his enlistment (United States v Hodge, supra); there being no

evidence that the witness was actually "unavailable" (United States v Davis, supra) ; and the deficiencies on the face of the deposition (United States v Valli, supra)—we hold that the admission in evidence of McIntyre's deposition was prejudicially erroneous.

We pause at this point to express our concern over the manner in which counsel, appointed to defend the accused, were shifted about. Charges preferred against the accused were referred to trial on August 16, 1969, before a court-martial for which, as noted above, Captain Brown was detailed as defense counsel. However, prior thereto, on July 8, 1969, the accused was represented, at the taking of a deposition from prosecution witness Case, by a Captain Colby. At the deposition hearing, Colby announced:

"The defense counsel wishes to enter an objection at this point in the proceedings. I object to the taking of this deposition because the defense counsel who will represent PFC Gains [sic], if this case goes to trial, is not present at these proceedings and will not have the opportunity to cross examine the witness."

No action was taken on this objection and no one questioned the accused as to his desires in the matter. The taking of the deposition proceeded as though the announcement had never been made. Three days later, Captain Colby represented the accused at the Article 32 investigation. At trial, Captain Tinney objected to the introduction of the Case deposition on several grounds, one of which was based on Captain Colby's objection to the taking of the deposition. Defense counsel, citing United States v Miller, 7 USCMA 23, 21 CMR 149 (1956) ; United States v Mathews, 31 CMR 620 (AFBR 1961) ; and United States v Donati, 14 USCMA 235, 34 CMR 15 (1963), argued that Colby's objection was "in effect a rejection of Captain Colby by the accused through his counsel." On August 22d, Captain Berry, another appointed counsel, represented the accused at the McIntyre deposition, with Captain Brown, detailed defense counsel, as deposition officer. When the case was brought to

trial, the accused had requested the services of Captain Tinney, a third counsel, because Captain Berry had become "unavailable." Considering the fact that this accused faced charges for which life imprisonment could have been imposed, this shuffling of counsel discloses a rather callous disregard for the nature of the attorney-client relationship. See United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962). If there was good reason for the assignment and reassignment of the various counsel, it certainly is not reflected in this record.

Since a rehearing is necessary, we need only comment briefly on the use of the deposition of defense witness Odom. The deposition was taken on August 26, 1969, with Captain Berry representing the accused. Odom testified that he was to depart from Vietnam on August 31st and gave an address in Philadelphia, Pennsylvania. On *September 10th,* Captain Tinney, in writing, requested that Odom be returned from his Pennsylvania address to Vietnam to testify at the accused's trial. His importance to the defense was unquestioned as it was Odom who called for the accused's help in his fight with Carrow which precipitated the accused's activity resulting in grievous injury to Carrow and the death of O'Shaughnessy. On *September 16th,* the Assistant Acting Adjutant informed Captain Tinney that Odom had departed from Cam Ranh Bay on *September 13th,* on a permanent change of station. Since the deposition had already been obtained, the request for the witness was denied. Had Captain Tinney's request been acted upon promptly, Odom could have been retained in the command to testify. Failure to do so, deprived the accused of a fundamental right and required him to accept the "half-loaf" represented by the deposition.

Inasmuch as Odom is presently on active duty with the Army, his presence as a witness at a rehearing may readily be secured. United States v Davis, supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

Article 49(d)(1) of the Uniform Code of Military Justice authorizes the use of depositions if it appears:

> "that the witness resides or is beyond the State, Territory, Commonwealth, or District of Columbia in which the court, commission, or board is ordered to sit, or beyond 100 miles from the place of trial or hearing."

The majority opinion of the Court in United States v Davis, 19 USCMA 217, 41 CMR 217 (1970), effectively excised from the statute the words "or beyond 100 miles from the place of trial or hearing." In the case before us, nobody would argue that the witnesses whose depositions were used were not beyond Vietnam or even Asia. Unless the Constitution compels a different result, we are not free to disregard this statute, no matter how strongly we may feel about the use of depositions. No court decision has held this provision to be unconstitutional.

The problem this case presents is a recurring one in Vietnam trials. If we decide, as the majority opinion does, that witnesses must be held beyond their normal time of rotation or returned to Vietnam in order to testify personally, I predict a rash of unwitnessed offenses there. An intimation of things to come is the response of one of the witnesses in this case to a question of why in an earlier statement he did not mention his having seen Gaines strike O'Shaughnessy: "Well, I had about 10 days left in-country and I didn't think I'd be allowed to go home. I thought I'd have to be held over here in Vietnam."

The prosecution in this case used 11 witnesses, 10 of whom testified in person and one by deposition. The defense had four witnesses. Three of these, including the appellant and his mother, testified in person and one by deposition. Changing venue to the United States could be likened to taking the mountain to Mohomet. A request for change of venue was made, but it was immediately occasioned by a delay in the arrival of the appellant's mother. She later arrived and testified. At a rehearing of this case, perhaps McIntyre and Odom will testify in person, but it seems probable that the members of the rehearing court will have presented to them much more paper testimony than did the members of this one.

The overriding consideration is fairness for the appellant and protection of his right to present his defense and to discredit the Government's case. One of the two depositions involved was taken at the request of the Government and the other was taken at the request of the defense. The opportunity for cross-examination existed and was exercised in both cases. An adequate opportunity for cross-examination may satisfy the Confrontation Clause even in the absence of physical confrontation. See Douglas v Alabama, 380 US 415, 418, 13 L Ed 2d 934, 85 S Ct 1074 (1965). An assessment of how Gaines was harmed by his deponents not testifying in person must rest on an assumption the deponent's demeanor and earnestness would have so impressed the court's members they would have credited his live testimony more than they did his deposition. After reading Odom's deposition in full, I fail to understand that it sets up a defense or an alibi. The maximum credit conceivable still did not help Gaines. The situation is different for the deposition of the prosecution witness, McIntyre. The information in his deposition is damaging to the appellant. But in my opinion the record contains enough other evidence of the subjects of his testimony to support a finding of the appellant's guilt beyond a reasonable doubt.

If the defense counsel really desired to have personal testimony from Odom or to cross-examine McIntyre, he had a perfect opportunity to make an unambiguous request for them. This opportunity occurred when the court recessed for three weeks in order to

return a witness from the United States. Just before this recess the trial counsel inquired, "Is there anybody else that I can possibly try to get here?" Although a member of the court suggested another witness, the defense counsel was silent. After the military judge indicated the trial would continue three weeks later, he said, "Defense counsel, do you have anything further then before we continue?" The reply was, "Sir, the defense has rested. Just for the record—well, I've rested."

I do not agree that the military judge abused his discretion by permitting use of these depositions. I would affirm the decision of the Court of Military Review.