UNITED STATES, Appellee

v

FREDRICK L. DANIELS, Private, U. S. Army, Appellant

11 USCMA 52, 28 CMR 276

No. 13,092

Decided December 11, 1959

First Lieutenant *Richard P. Nee* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

First Lieutenant *George J. Miller* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

HOMER FERGUSON, Judge:

Accused was originally tried by general court-martial at Fort Ord, California, on May 13, 1958, upon two specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, alleging, respectively, the theft of the sums of $65.00 and $5.00. Consonant with his plea, accused was found guilty of both specifications and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. The sentence was approved by the convening authority. An Army board of review ordered a rehearing on the basis that command influence had been exercised in the proceedings. The rehearing was initially limited to sentence, but upon a motion for reconsideration in which the Government conceded the plea itself had been unlawfully obtained, the board also set aside the findings.

The general court-martial which reheard accused's case was convened by the Commanding General, Sixth United States Army, San Francisco, California, on December 5, 1958. At the outset of the proceedings, the defense counsel moved for a continuance until on or after December 9, 1958, in order that a witness, whose deposition was to be offered in evidence by the prosecution, might be afforded the opportunity personally to appear before the court-martial. In support of his motion, counsel established that the witness in question, Private Burkett, who was the victim of larceny charged in specification 1 of the Charge, had indicated in his deposition that he planned to be in Oakland, California, for approximately two weeks, commencing on December 9. Oakland, California, is within ten miles of the place of trial. Defense counsel had previously demanded the personal appearance of Burkett at the trial when it was originally proposed in November 1958 to take his deposition. At that time, Private Burkett resided in Tacoma, Washington, a place in excess of one hundred miles distant from San Francisco. On December 4, 1958, prior to the convening of the court-martial, defense counsel brought to the attention of the convening authority in writing the fact of Burkett's intended visit to Oakland and moved for a continuance of the case. This motion was denied in an indorsement signed by the trial counsel which noted, "Trial of this case remains set for 5 Dec 1958, at 0900 hrs, as per verbal instructions from SJA, 6th US Army."

The trial counsel argued that the motion should be denied, as a Government witness had been brought to the trial from Fort Dix, New Jersey, on temporary duty, and should not be required to be put to the trouble of further delay. He also argued that, as the witness' deposition was now available, the accused would be denied no substantial right by rejection of his request for a continuance.

The law officer denied the defense motion. Subsequently, the accused pleaded not guilty to the specification involving Burkett as a victim and guilty to the Charge and the other specification. He was found guilty of both specifications and sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Intermediate appellate authorities affirmed, and we granted review on the issues whether the law officer erred in denying the accused's request for a continuance and whether it was prejudicial to permit accused's trial testimony to be impeached by utilization of a stipulation of fact into which he had entered at his former trial.

The granting or denial of a motion made at the trial for a continuance of court-martial proceedings lies within the sound discretion of the law officer. United States v Plummer, 1 USCMA 373, 3 CMR 107. Only when he abuses that discretion will we reverse for refusal of a reasonable delay. United States v Vanderpool, 4 USCMA 561, 16 CMR 135. And the erroneous denial of accused's motion must, of course, prejudice his substantial rights. United

States v Nichols, 2 USCMA 27, 6 CMR 27. It is difficult to lay down any principle whereby the question of abuse of discretion may be precisely determined, for, as the very phrase imports, the exercise of judicial discretion depends upon the circumstances with which the law officer was faced at the particular trial. It may well appear that the defense counsel seeks only to vex the Government with needless delay in order to avoid the certain consequences of his client's misconduct. On the other hand, he may need further time to secure the attendance of material witnesses or to prepare his defense. In either instance, it is obvious that the military trial judge should liberally grant motions for delay bottomed upon a proper showing. At the same time, he should not hesitate to insist upon proceeding if it is clear that there is little merit to be obtained from a postponement. As we pointed out in United States v Nichols, supra:

" . . . We believe that law officers should weigh carefully the merits of a motion to continue and if it appears reasonable that it is not made on frivolous grounds or solely for delay, the request should ordinarily be granted. However, the burden still remains on the moving party to justify the motion. Counsel for accused has the responsibility to make a full and fair disclosure of the necessity for, and the nature, extent and availability of, the desired evidence. If he fails to do so, the law officer cannot be condemned."

We are certain from our review of the facts disclosed in this record that the defense counsel demon- strated a sufficient basis for his motion. As was pointed out in United States v Valli, 7 USCMA 60, 21 CMR 186, depositions are tools for the prosecution which cut deeply into the privileges of an accused. We there indicated that they should be used only "when the Government cannot reasonably have the witnesses present at the time of trial." Here, it is obvious that it would have been entirely reasonable to have the witness, yet a member of the military service, present at the hearing. The delay requested was relatively brief. The witness would have been in a nearby city, and there can be no doubt that his presence before the court-martial would have afforded an infinitely fairer opportunity for the testing of his statements.

The Government urges, however, that no prejudice to the accused resulted from the denial of the continuance, for Burkett could testify only concerning the taking of his money. This begs the question, for had the witness been present, an issue may well have been raised concerning the taking and the amount involved, the latter an important circumstance in measuring punishment. In any event, we can only speculate concerning what might have happened had the witness been present and counsel not forced to rely upon the arid recitals of his deposition. We are not inclined to deny substantial relief to an accused on that basis.

We hold the defense request reasonable and its denial by the law officer constituted an abuse of his discretion. As the accused was thereby denied the advantages inherent in the personal testimony of a prosecution witness, the error prejudiced his substantial rights. Reversal of the findings of guilty must follow on specification 1 of the Charge.

Our action on the foregoing question would normally eliminate any necessity for consideration of the issue relating to the use of a stipulation made in connection with a guilty plea to impeach an accused who, at a rehearing, pleads not guilty. However, Judge Latimer has chosen in his separate opinion to set forth his views with relation to this subject. In order that the law may be settled and the matter put to rest, I concur unreservedly in his conclusion that stipulations so made may not be used subsequently to destroy an accused's credibility. The fair probability that consideration of the stipulation influenced the court-martial in reaching its verdict concerning specification 1 of the Charge also requires reversal of the findings of guilty with respect thereto.

The decision of the board of review is reversed and the record of trial is

**55**

returned for reassessment of the sentence on the basis of the remaining findings of guilty or direction of a rehearing on specification 1 and the sentence.

Chief Judge QUINN concurs in the result.

LATIMER, Judge (concurring in the result):

I concur in the result.

I do not join in holding that the law officer abused his discretion in denying the motion for a continuance. As we pointed out in United States v Rogan, 8 USCMA 739, 745, 25 CMR 243, our concern goes further than whether the defense has presented adequate grounds for granting a continuance or whether the law officer could fairly have done so. The test is not what the law officer could have done, but rather, whether he abused his discretion in what he did, and I believe that if all of the facts were given appropriate consideration, it could be said fairly that he ruled within discretionary limits. However, I need not develop that subject for the reason that, in my opinion, the case must be reversed on the more important issue raised by the accused. That question requires us to determine whether a stipulation of facts obtained in connection with a plea of guilty may be used in a subsequent trial when the findings predicated on that plea are set aside.

A reading of the decision of the board of review discloses that it considered this specific assignment of error and held that in using the stipulation for impeachment purposes, trial counsel committed error. However, the board went on to hold that the error was not prejudicial to the substantial rights of the accused. For reasons which I will hereinafter present, I agree with the first part of the holding but disagree on the conclusion that the accused was not prejudiced. A short statement of facts is necessary to lay a foundation for my views.

Upon the first trial, the accused pleaded guilty pursuant to a pretrial agreement with the convening authority. After findings were returned, a stipulation of facts signed by trial counsel, defense counsel, and the accused, was introduced in evidence, apparently for the purpose of furnishing the court-martial with the facts of the offense so that they could be considered in connection with the punishment to be imposed. When the record of that trial was considered by the board of review, it affirmed the findings but set aside the sentence and directed a rehearing only as to punishment. The accused filed a petition for reconsideration which was joined in by the Government, and thereafter the board granted the petition and ordered a rehearing on the merits. I quote what I consider to be the most important part of the board's decision:

"Since it is apparent that the government now considers that the impact of the convening authority's erroneous remarks until corrected so pervaded all the activities of the general courts-martial convened in his command as to require a rehearing in all cases tried therein during such period, we consider that the only course left open to us is to apply the doctrine of United States v. Lynch, 9 USCMA 523, 26 CMR 303, imputing prejudice to the court here involved, and set aside both the findings and the sentence." [September 15, 1958.]

At the rehearing, the accused entered a plea of guilty to one specification of larceny and a plea of not guilty to the offense with which we are here concerned. During the course of the trial, the Government introduced in evidence two pretrial confessions executed by the accused. These, together with evidence of the wrongful taking, constituted the Government's case. The accused's defense was that he did not take the money, the confessions were false and involuntary, and he confessed because he was coerced and intimidated by agents of the Government. In conducting his cross-examination of the accused, who was a witness in his own defense, trial counsel sought to weaken his testimony by using the following tactics. In connection with the first two confessions, trial counsel

asked the accused the following questions and received these answers:

"Q You lied once when you were scared, didn't you—at the CID office?

"A Yes, sir.

"Q In fact, you lied twice at the CID office when you were scared?

"A Yes, sir.

"Q Are you lying now when you're scared?

"A No, sir.

"Q You're positive of that?

"A Yes, sir.

"Q. Now, you're denying any implication whatsoever in the larceny of the $65 at Fort Ord on the 8th of March of this year—is that correct?

"A Yes, sir.

"Q Now, have you ever made a statement, signed by yourself, outside of the prosecution exhibits that have been introduced in evidence today, admitting the fact that you stole that $65?

"A No more than the CID, sir.

"Q Are you positive of that?

"A Yes, sir."

After receiving the last answer, trial counsel produced what was later identified as the previously mentioned stipulation of facts with the announced purpose that he intended to refresh the recollection of the witness. This procedure was objected to by defense counsel, and thereupon an out-of-court conference was held. From the information furnished to the law officer, the colloquy of counsel, and the stipulation itself, it becomes crystal clear that the facts were agreed upon by the parties solely for the purpose of processing a plea of guilty. The law officer overruled defense counsel's objection, the court reconvened, and the statement was then shown to the accused. He was thereupon asked if it bore his signature and if he would like to change his answer to the previous question. He answered both questions in the affirmative. Obviously, trial counsel's tactics and technique required the accused to be discredited or disclose to the court-martial that he stipulated his guilt as a prelude to a plea of guilty at the former hearing.

The parties concede that in Kercheval v United States, 274 US 220, 47 S Ct 582, 71 L ed 1009 (1927), ▮▮▮▮ ▪ the Supreme Court held it was error to furnish a jury with information that the accused had pleaded guilty at a prior trial. They disagree, however, on the question of whether a stipulation of facts entered into pursuant to the plea of guilty falls under the same proscription. I am of the opinion that it must.

In military practice, a procedure has been adopted whereby an accused may solicit the convening authority through his staff judge advocate to fix the maximum sentence which will be affirmed if the accused enters a plea of guilty. The procedure has merit, for it partakes of a compact which is beneficial to both parties. The Government is saved much of the trouble and expense normally incident to the trial of a criminal case, and the accused—who freely concedes his guilt—is assured that no more than an agreed maximum punishment will be approved. The proceeding does not interfere with the duty of court-martial members to impose appropriate punishment and for that reason the members must know something about the facts and circumstances of the offense. In addition, boards of review and other authorities have powers to reduce sentences, and they should be informed on the facts of the crime. To furnish the court and reviewing authorities with the necessary information and simplify the proceeding, trial counsel, defense counsel, and the accused quite often stipulate to the facts with the understanding that the admissions by the accused are induced by his hope for clemency principally from the convening authority. Without some such purpose, it would be unusual for defense counsel to agree to all facts necessary to support a conviction, and in this case that was the effect of the stipulation. A comparison of the stipulated facts with those alleged in the specification shows marked similarity and, if the facts admitted by the plea of guilty cannot be used, it would be anomalous to give those contained in the stipulation different treatment. The two are so closely woven into a single judicial act that they should be

measured by the same rule. Particularly is that true when it is found that command influence pervades the plea, for if it is poisoned, all closely related matters which support it are infested. I, therefore, conclude that the stipulation was not usable against the accused and that trial counsel erred when he interjected it into the trial.

One further argument supports my conclusion and, because I believe the board of review sets it out with clarity, I quote and adopt the following portion of its opinion:

"The staff judge advocate discussed this issue in his review (Paragraph 4*f*) and stated, on the basis of *United States* v. *Kercheval* (374 US 220, 71 L. ed. 1009, 47 S. Ct. 582) and other cases cited that the prevailing rule is that a previous plea of guilty subsequently withdrawn, is not admissible upon a retrial, as an admission. We agree. On the other hand, a stipulation or an agreed statement of facts in one trial is generally binding upon a party in a subsequent retrial. The question then remains whether the circumstances in a typical guilty plea case such as this, in which the plea has been entered pursuant to an agreement are such as to render the accompanying stipulation inadmissible upon a rehearing, at which the accused pleads not guilty. We believe that they are. Otherwise, the trial counsel could, in nearly every such case accomplish indirectly what he cannot do directly. Once it has been shown, as here, that the accused has previously in a written stipulation admitted facts which supported his earlier guilty plea, the defense counsel has no choice but to show the circumstances surrounding the making of the stipulation in an effort to minimize the harmful effect of the admission. We cannot regard the introduction of such explanatory matter as a waiver of an otherwise valid objection, nor as a cure for the error." [March 24, 1959.]

That leaves for consideration the question of prejudice, and this is the point where I take issue with the board of review. True it is, as the board reasoned, that the prosecution had established the corpus delicti and the law officer had correctly admitted the two pretrial confessions of the accused. Obviously, when that evidence is accepted as true, the record supports the conclusion that accused's guilt is overwhelmingly established. But accused had testified, contrary to the evidence presented by the Government, that the extrajudicial confessions were involuntary and coerced. If he were to be believed and the confessions rejected, the Government's evidence would be insufficient to sustain the finding of guilt. The resolution of the dispute in the testimony, therefore, involves the credibility of the accused, since evidence in support of his contention of involuntariness was furnished by him. If his credibility was impaired, his testimony would be discredited. Trial counsel, by his method of proceeding, brought before the court three inadmissible factors which would have a serious impact on accused's truthfulness. The first was that he had falsified on the witness stand when he denied having confessed on a third occasion. The second was that his story of being coerced and intimidated by Government investigators lacked credence in view of the fact that he voluntarily stipulated to the commission of the offense, with consent of his counsel, and at a time when coercion and fear could not have induced him to speak. Third, accused would not be likely to plead guilty if he was, in fact, not guilty. If the court-martial concluded the accused was not worthy of belief for any or all of those reasons, his defense was unfairly undermined. Because there is at least a fair probability that the court-martial could have been so influenced, I believe prejudice infests the finding as to the first specification, to which accused pleaded not guilty.

For the foregoing reasons, I concur in the disposition ordered by the Court.