## UNITED STATES, Appellee

v

## RONALD R. DAVIS, Private, U. S. Army, Appellant

19 USCMA 217, 41 CMR 217

No. 22,280

February 13, 1970

*Captain Ira J. Dembrow* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Karl J. Uebel.*

*Captain Richard K. Bank* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Major R. Kevin McHugh.*

## Opinion of the Court

FERGUSON, Judge:

We are concerned in this case with whether the law officer erred to the prejudice of the accused by receiving into evidence Prosecution Exhibit 1. The exhibit is the deposition testimony of Private Geddes, a prosecution witness to the events set forth in the specifications of Additional Charges I and II—sodomy and assault with intent to commit sodomy, Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. Admissibility of the deposition was contested at trial by defense counsel and the law officer stated that he would treat the objection as a request for a continuance of the trial in order to secure the personal attendance of the witness. After hearing

218

from both trial and defense counsel on the matter, the law officer overruled the objection.

The charged offenses allegedly occurred on or about July 15, 1968, at Fort Riley, Kansas. On September 3, defense counsel was informed that a deposition of expected testimony was to be taken from Private Geddes. At the deposition hearing, September 5th, defense counsel announced that he consented to the proceedings only if it was understood that "the taking of this deposition in no way implies a waiver on the part of the defense of the right to seek out the testimony of this witness at a future trial should such trial be held." Prior to the examination of Geddes, the latter disclosed that he was then at Fort Riley to serve a sentence and that on October 22d, next, he would return to his unit at Fort Benjamin Harrison. Trial was held at Fort Riley on October 29–30, 1968.

At the hearing on the admissibility of Geddes' deposition, trial counsel contended that the witness should be considered unavailable since Fort Benjamin Harrison was approximately nine hundred miles away and the defense had had an opportunity to confront the witness and make any notation in the record of the deposition that he desired.

Defense counsel countered by alleging that on October 25, four days prior to trial, he had, in writing requested that trial counsel have Geddes present at accused's trial. By memorandum, dated October 26th, trial counsel denied the request in the following language:

"In accordance with paragraph 115 (a), UCMJ, you are hereby advised that in view of the fact that there is in existence a written deposition of the required witness, (Private Melvin Geddes), the Government does not believe that this witness' personal appearance would be either reasonable or necessary."

Defense counsel also disclosed that in the interim, between the taking of the deposition and his request, there took place two actions which had a bearing on whether or not Geddes would be sought as a witness. The first was a motion to the convening authority, dated October 10th, requesting a new pretrial advice. The convening authority acted on the motion on October 17th. On October 21st, defense counsel submitted an agreement to plead guilty to Charge I if the convening authority would dismiss Additional Charges I and II (Appellate Exhibit 6). Trial counsel recommended approval of the offer but the convening authority acted to the contrary on October 24th, upon recommendation of his staff judge advocate that he not accept the offer. The request for Geddes' appearance was made in writing the next day. In response to the law officer's inquiry, defense counsel disclosed that he had *orally* requested the witness' appearance two days prior to the date of the written communication. The law officer, as noted above, overruled the defense objection to the admission of Prosecution Exhibit 1.

Initially we note that the right of the defense to the personal appearance and testimony of witnesses at a court-martial is guaranteed by Article 46, Code, supra, 10 USC § 846. Paragraph 115a, Manual for Courts-Martial, United States, 1951, provides that trial counsel is charged with the responsibility of obtaining witnesses for both the prosecution and the defense; and, where there is disagreement, prior to trial, between trial and defense counsel as to whether the testimony of a witness is necessary, the matter must be referred for decision to the convening authority. There is no evidence in this record that the convening authority was informed of the defense request. However, renewal of the request at trial and there denied, purges the error of prejudice and becomes reviewable on appeal as part of the record to determine whether there was an abuse of discretion. United States v Thornton, 8 USCMA 446, 24 CMR 256 (1957).

While the use of depositions in courts-martial is authorized by Article 49, Code, supra, 10 <span> █</span> USC § 849, if certain prerequisites are satisfied, this codal provision does not conflict with the right to compulsory process as depositions are an exception to the general rule of live testimony and are to be used only when the Government cannot reasonably have the witness present at trial. United States v Valli, 7 USCMA 60, 21 CMR 186 (1956). That portion of paragraph 115a, Manual, supra, which contains a cross-reference to Article 49, concerning the conditions under which a deposition, to be admissible, may be taken, was deleted from the 1969 Manual. In the Analysis of Contents, Manual for Courts-Martial, United States, 1969, chapter XXIII, the following is stated:

". . . it is considered undesirable to emphasize the use of depositions in view of the development of the law since 1951. Additionally, it is the exception rather than the rule to use depositions in trials today. Therefore, the Manual should not infer that their use is normal."

Although allowing depositions to be utilized in certain cases (United States v Jacoby, 11 USCMA 428, 29 CMR 244 (1960); United States v Griffin, 17 USCMA 387, 38 CMR 185 (1968)), this Court has continually stressed the importance of having the court itself hear the witness. United States v Thornton, supra; United States v Daniels, 11 USCMA 52, 28 CMR 276 (1959). As we said in Thornton, at page 449:

"An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition. On the contrary, he is entitled to have the witness testify directly from the witness stand in the courtroom."

And in Daniels, at page 55:

". . . As was pointed out in United States v Valli, 7 USCMA 60, 21 CMR 186, depositions are tools for the prosecution which cut deeply into the privileges of an accused."

The Supreme Court, in discussing the right to confrontation contained in the Sixth Amendment to the Constitution, stated in Barber v Page, 390 US 719, 725, 20 L Ed 2d 255, 88 S Ct 1318 (1968):

". . . The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and *the occasion for the jury to weigh the demeanor of the witness.*" [Emphasis supplied.]

The standard to be applied in determining whether live testimony can permissibly yield to an oral deposition was set forth in United States v Sweeney, 14 USCMA 599, 606, 34 CMR 379 (1964):

". . . Each case must be decided on an ad hoc basis in which the materiality of the testimony and *its relevance to the guilt or innocence of the accused,* together with the relative responsibilities of the parties concerned, is weighed against the equities of the situation."

Commenting on this passage in Sweeney, we said in United States v Manos, 17 USCMA 10, 15, 37 CMR 274 (1967):

". . . We are, however, concerned with impressing on all concerned the undoubted right of the accused to secure the attendance of witnesses in his own behalf; the need for seriously considering the request; and taking necessary measures to comply therewith if such can be done *without manifest injury to the service.* That is what we meant in Sweeney, supra, in speaking of weighing the relative responsibilities of the parties against the equities of the situation." [Emphasis supplied.]

In the case at bar, the testimony of the deponent Geddes, was undoubtedly material and relevant to the guilt or innocence of the appellant. The only testimony presented by the Government was that of the victim. Geddes, in his deposition, corroborated this testimony. The accused denied the

offense under oath and substantiated his denial by the testimony of two witnesses who were present during the time when the alleged offense occurred. Each acknowledged that he was a friend of the accused. All of the witnesses, including the victim and the deponent Geddes, were stockade prisoners at the time. Trial counsel, in his argument on the merits, stressed the importance of the corroboration by Geddes; the fact that the defense witnesses were friends of the accused; and that while the victim had been returned to duty at *Fort Leonard Wood, Missouri,* one of the defense witnesses was still in the stockade at Fort Riley and the other was in the stockade at *Fort Hood, Texas,* for insubordination to a first sergeant. Trial counsel admitting that there were discrepancies between the testimony of the victim and that set forth in the deposition, stated in his argument:

> "Gentlemen, as I said earlier, the defense would make some argument concerning discrepancies and inconsistencies, but I ask the court again to remember, were these inconsistencies or discrepancies, whichever you desire to call them, from a wilful desire to make a falsehood, or are they from innocent error? Are they perhaps from lack of close observation or testimony only from hearing, only what he thought went on?"

While the law officer instructed the court that it should consider, in weighing the credibility of the deposition, that it did not have an opportunity personally to observe the demeanor of the witness Geddes, he found it necessary, because of the fact that the deposition alleged that the accused threatened the victim, to tell the court that it could consider such evidence of other misconduct only for the limited purpose of tending to show a consciousness of guilt and not to infer therefrom that the accused had an evil disposition or criminal propensities. All in all, it must be conceded that the deposition of Geddes played a vital role in the deliberation of the court on the charges.[1]

Having reached this conclusion, what then of use of the deposition in this case? The pertinent prerequisite therefor, and the basis on which the law officer denied the defense request for a continuance and admitted the deposition, was that the witness was beyond one hundred miles from the place of trial. Article 49 (d) (1), Code, supra. There is in this record no showing by the Government that the witness, aside from his geographical location, was otherwise *unavailable* to testify in person or that the Government made any effort to make such a determination.

In United States v Ciarletta, 7 USCMA 606, 23 CMR 70 (1957), this Court sustained the use of a deposition by the Government where the record reflected that the deponent had been discharged from the service prior to trial, was presumably at his residence, a place more than one hundred miles away, defense counsel did not object to the taking of the deposition, and *the deponent's testimony was corroborated in every detail by the accused's confession.* Nevertheless, we stated in *Ciarletta,* at page 614:

> ". . . So there will be no misunderstanding, we are only considering residence as it may govern those witnesses who are not in the Service. A man in the armed forces may be readily available for appearance at trial anywhere American service men are stationed, regardless of his actual residence, providing he is on station."

---

[1] It is important to point out at this juncture that the Article 32 investigating officer recommended that these charges be dismissed because he believed that the victim and Geddes were fabricating their testimony. The accused's immediate commanding officer, without stating any reason, recommended trial by general court-martial. The staff judge advocate to the convening authority so advised the latter and also recommended trial by general court-martial on the basis of the Article 32.

Cf. United States v Daniels, supra, at page 55.

In Barber v Page, supra, a witness, who had testified at a preliminary hearing, was, at the time of trial, incarcerated in a Federal penitentiary about two hundred twenty-five miles away. Over the objection of defense counsel, the trial court admitted into evidence his pretrial testimony on the ground that the witness was *unavailable*. In reversing because the State did not demonstrate that the witness was actually unavailable, the Supreme Court stated:

"We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed 1940).

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprive[d] it of any continuing validity in the criminal law. . . .

". . . The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." [*Id.*, 390 US, at pages 723 and 725.]

In a per curiam opinion, the Supreme Court retroactively applied its holding in Barber v Page, supra, that the ab-

**222**

sence of a witness from the jurisdiction would not justify the use at trial of preliminary hearing testimony unless the State had made a good-faith effort to secure the witness' presence. Berger v California, 393 US 314, 21 L Ed 2d 508, 89 S Ct 540 (1969).

". . . As we pointed out in *Barber* v *Page*, one of the important objects of the right of confrontation was to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses. 390 US, at 721." [*Ibid.*, at page 315.]

Our cases concerning the use of testimony given at an Article 32 investigation are in accord. United States v Obligacion, 17 USCMA 36, 37 CMR 300 (1967).

"We conclude, therefore, that the sworn testimony of a witness at a pretrial investigation of the charges against an accused may be used at his subsequent trial only if a showing is made of the witness' actual unavailability to appear and testify in person. Such is certainly in accordance with the rule applicable in the United States District Courts and in nearly every other jurisdiction. Peterson v United States, . . . [344 F2d 419 (CA 5th Cir) (1965)]; Smith v United States, . . . [106 F2d 726 (CA 4th Cir) (1939)]; Annotations, 15 ALR 495. 538, 79 ALR 1392, 122 ALR 425. 159 ALR 1240. We place no undue burden on the Government in so restricting it. In the ordinary case, the accused is entitled to look upon his accusers and to have the court weigh their demeanor in testifying. Occasionally, this requirement must give way to public policy. United States v Jacoby, 11 USCMA 428, 29 CMR 244; Mattox v United States, 156 US 237, 39 L Ed 409, 15 S Ct 337 (1895); Pointer v Texas, . . . [380 US 400, 13 L Ed 2d 923, 85 S Ct 1065 (1965)]. But the exception is based on necessity, and it is at least incumbent upon the Government to establish that need by showing the witness is dead, incapacitated, or, if beyond the court's

jurisdiction, unwilling to appear. United States v Burrow, . . . [16 USCMA 94, 36 CMR 250 (1966)]." [*Ibid.*, at 38–39.]

In *Obligacion,* we distinguished the use of depositions from Article 32 testimony on the ground that "The taking of depositions necessarily contemplates their use in evidence at trial in lieu of an *unavailable* witness." (*Ibid.*, at page 38.) (Emphasis supplied.) Since a serviceman, subject to military orders, is always ▋ within the jurisdiction of the military court, we do not believe that he is *unavailable* simply because he is stationed more than one hundred miles from the situs of the trial. Something more is required.

The importance of a witness' demeanor before the court and his practical availability has been recognized by several military commentators:

". . . No attorney with any amount of trial experience can have failed to note that there is a significant difference between the demeanor of a witness before a deposing officer and his conduct at an actual trial. Nor can he have failed to observe that cross-examination at trial produces a test of veracity which is seldom achieved during the taking of a deposition. . . .

. . . . .

". . . Today, there can be no justification for using the depositions or former testimony of witnesses who are amenable to process and otherwise able to testify, solely because they are located some arbitrary distance from the place of trial. . . .

. . . . .

". . . At the present, transportation is so speedy and efficient that generally there can be no valid basis for the use of depositions in peacetime. Of course, there are always situations where a civilian witness will not be amenable to process, but on the whole they are infrequent. Certainly depositions from military personnel should be rare, for they are always amenable to orders and may easily be returned to the place of trial. It may be argued that military efficiency precludes this, and it is true that military necessity is one basis for utilizing a deposition. However, the history of the Code leaves no doubt that its authors viewed little short of war or an armed conflict as an adequate excuse for a deposition on that ground. Clearly, they did not contemplate the term to be a synonym for convenience." [Melnick, "The Defendant's Right To Obtain Evidence: An Examination Of The Military Viewpoint," 27–100–29 Military Law Review 1, 39–42 (July 1965).]

See also McGovern, "Military Oral Deposition and Modern Communications," 27–100–45 Military Law Review 43 (July 1969); McCarthy, "Depositions in Courts-Martial," 1957 (unpublished thesis, The Judge Advocate General's School, Charlottesville, Virginia).

Although not raised in this case, "military necessity" is, as noted above, an additional basis for the use of a deposition at trial. Article 49(d)(2), Code, supra. The meaning of these words was considered and commented upon by the drafters of the Code as reflected in the following exchange:

"MR. BROOKS: . . . May I ask you this question, Mr. Larkin: Under small 2 subsection (d) what is meant by 'military necessity?'

"MR. LARKIN: I take it that covers the situation where there is a witness subject to the code, or military personnel who are on such an important military mission, or by virtue of military operations, that it is impossible in performing their duty to also be at the place of the trial. In that case it is permitted that their deposition be read at the trial.

"MR. BROOKS: Of course, that could be badly abused if they wanted to.

"MR. LARKIN: I suppose it is a question of the good faith in operating or administering it." [Hearings before House Armed Services Committee on HR 2498, 81st Congress, 1st Session, page 1070.]

In the case at bar, Geddes was stationed at Fort Benjamin Harrison, Indiana, and trial was convened at Fort Riley, Kansas. There is no indication in the record or in the allied papers that he was essential to the mission at Fort Benjamin Harrison. In view of the fact that Geddes had just completed the confinement portion of a court-martial sentence and his unit was a headquarters and headquarters company, a claim of military necessity, preventing his appearance, if such had been advanced, would appear to be misplaced. If he could travel between Fort Benjamin Harrison and Fort Riley for the purpose of being confined in a stockade, there would seem to be no reason why he could not similarly travel to Fort Riley to testify as a witness before a court-martial.

We believe that to allow the one hundred mile clause of Article 49(d)(1), Code, supra, standing alone, to control the admissibility of depositions might result in their routine admission in many courts-martial in derogation of the principle that depositions are an exception to the normal rule of live testimony. We hold, therefore, that with regard to military witnesses, the right of confrontation as embodied in military due process requires that actual unavailability be established before a deposition of a serviceman is admitted into evidence.

In this case, the denial by the law officer of the defense request for a continuance to obtain the personal appearance of Private Geddes, denied the court the opportunity of observing the demeanor of this witness while he was testifying. The credibility of Geddes, based in large part on his demeanor, as observed by the Article 32 investigating officer, was crucial to the appellant's case, especially in view of the latter's complete denial of the charges, the testimony of defense witnesses, and the inconsistencies between the testimony of the alleged victim and the deponent. As the defense request for a continuance was reasonable, and was made at trial following an erroneous refusal by trial counsel to have the witness present (United States v Thornton, supra), its denial by the law officer constituted an abuse of discretion and was, under these circumstances, clearly prejudicial to the substantial rights of the appellant. United States v Daniels, supra.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the finding of guilty of Charge I, or a rehearing on all charges may be ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (concurring in the result):

In this instance I agree that the accused should have the benefit of a personal appearance by Private Geddes in order that the court might observe his demeanor while testifying as a part of its evaluation of his credibility.

I do not join, however, in the holding that military due process requires in all cases that actual unavailability be established before a deposition of a serviceman is admitted into evidence. In my opinion, a decision on whether to require a personal appearance by a military witness should take into consideration such factors as the bearing the testimony the witness can give on the guilt or innocence of the accused, whether the testimony is cumulative, the length and complications of the travel involved, and the military effect of the absence of the witness from his unit. It is in essence a question of reasonableness, and the decision is one for the sound discretion of the military judge. United States v Daniels, 11 USCMA 52, 28 CMR 276 (1959).