UNITED STATES, Appellee,

v.

Gerald M. VANDERWIER, Commander,
U.S. Navy, Appellant.

No. 51,578.

NMCM 84-1217.

U.S. Court of Military Appeals.

Dec. 14, 1987.

For Appellant: *Captain David C. Larson, JAGC, USN* (argued); *Commander J.A. Williams, JAGC, USN.*

For Appellee: *Lieutenant Commander Donald B. Weber, JAGC, USN* (argued); *Captain Carl H. Horst, JAGC, USN, Commander Michael P. Green, JAGC, USN, Lieutenant John F. Carroll, Jr., JAGC, USNR* (on briefs); *Captain W.J. Hughes, JAGC, USN* and *Captain David B. Stratton, USMC.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial at Naval Base, Norfolk, Virginia, on November 2, 28–30, and December 1, 1983. Contrary to his pleas, he was convicted by a military judge sitting alone of three specifications of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925. His sentence to partial forfeiture of pay and dismissal from the Naval Service was approved by the convening authority and affirmed by the Court of Military Review. This Court granted review of two issues.

I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING THE DEPOSITION OF LIEUTENANT COMMANDER KLICH INTO EVIDENCE.

We hold that the military judge erred in admitting the deposition under the facts presented here, but we further hold the error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Weeks,* 20 M.J. 22 (C.M.A. 1985).

At the Government's request, a videotaped deposition of a potential prosecution witness, Lieutenant Commander Klich, was taken on November 1, 1983. Appellant was present with his defense counsel, who objected to the taking of the deposition on the basis that the presence of the witness would be necessary at trial. During the first session of trial held the next day, defense counsel voiced opposition to use of the deposition by the Government "as substitution for the live testimony of Lieutenant Commander Klich." Trial counsel responded that the deposition was taken in anticipation that the witness would not be available to testify at trial due to his military duties. He provided the military judge with a letter dated October 14, 1983, from the Commanding Officer of the USS EDWARD MCDONNELL (FF-1043) stating that the presence on board the ship of Lieutenant Commander Klich, who was the ship's Executive Officer, was considered essential during the 3 weeks beginning November 7. During this period, the ship was to participate in required refresher training, which had been scheduled for over 2 months.

◼ Defense counsel also objected to admission of a transcript of the videotape, arguing that it would destroy "any opportunity for the trier of fact to obviously observe the demeanor and I think the demeanor of this particular witness is critically important to the defense." Trial counsel countered that there was no "matter of significance" concerning Lieutenant Commander Klich's credibility. He also contended that use of a transcript would be more efficient because the videotape would "be a nightmare to edit." The military judge agreed with trial counsel that the witness was unavailable and that use of a

transcript of the deposition appeared to be more practical.[1]

Defense counsel then requested "that the trial be continued for a reasonable period of time," stating that he would not be prepared to proceed with trial on the merits on November 14, as it was apparently then scheduled. The military judge granted that request, setting trial for November 28.

On November 28, trial on the merits commenced before military judge alone. Appellant was charged with committing three acts of consensual sodomy with Hospital Corpsman Third Class Rainville. All offenses were alleged to have occurred during March 1983 while appellant was commanding officer of the USS EDWARD MCDONNELL.[2]

The Government called Rainville, who testified under a grant of testimonial immunity, as its first witness. At the time of trial, Rainville was a civilian, having been honorably discharged a few days earlier after completing a 4–year enlistment in the Navy. Rainville testified that he was a homosexual and that he engaged in oral sodomy with appellant on three separate occasions in March of 1983, while the ship was deployed on a Mediterranean cruise. One incident took place in a hotel room in Tunis, Tunisia; and two incidents occurred in appellant's cabin on board ship.

On November 29, the second day of trial on the merits, trial counsel offered into evidence the written transcript of the deposition of Lieutenant Commander Klich. Defense counsel renewed his objection to use of the deposition, commenting that there was no showing of continued unavailability of the witness.

Trial counsel represented to the court that Lieutenant Commander Klich was still aboard the ship and that the ship's refresher training had been extended through December 2d. Therefore, trial counsel submitted, "a fair inference" existed that Lieutenant Commander Klich continued to be unavailable. Trial counsel further commented that "he is unavailable within the sense of Article 49 UCMJ [10 U.S.C. § 849], because he's on the USS MCDONNELL further than 100 miles from the scene of this trial." The military judge overruled defense counsel's objection, stating without elaboration that, "I believe there is an ample ground for taking of the deposition and the admission of it into evidence."

Depositions may be admitted into evidence at trial under the "Former testimony" hearsay exception "if the declarant is unavailable as a witness." Mil.R.Evid. 804(b)(1), Manual for Courts-Martial, United States, 1969 (Revised edition). For purposes of Mil.R.Evid. 804(b), unavailability includes situations where the witness "is unavailable within the meaning of Article 49(d)(2)." Mil.R.Evid. 804(a)(6). "[M]ilitary necessity" is one justification provided under Article 49(d)(2) of the Code for taking and using a deposition.

█ When a deposition is offered against an accused, the Government must establish that the witness is unavailable, both in terms of the hearsay prohibition of Mil.R.Evid. 804(b)(1) and in terms of the Confrontation Clause of the Sixth Amendment. *United States v. Cokeley*, 22 M.J. 225 (C.M.A.1986); *United States v. Crockett*, 21 M.J. 423 (C.M.A.1986). "[A] witness is not 'unavailable' for purposes of the" Confrontation Clause "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968). *See Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). As recently reaffirmed by the Supreme Court, the unavailability analysis applies to former testimony because

> former testimony often is only a weaker substitute for live testimony. It seldom

---

1. Use of a videotaped deposition is generally preferable to a written version, as it permits the factfinder to observe the demeanor of the witness, hear voice inflections, and view gestures and facial expressions. *See United States v. Crockett*, 21 M.J. 423, 428 (C.M.A.1986); *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982).

2. Appellant was relieved of command when the offenses came to light.

has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence. See Graham, The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One, 8 Crim.L.Bull. 99, 143 (1972). But if the declarant is unavailable, no "better" version of the evidence exists, and the former testimony may be admitted as a substitute for live testimony on the same point.

United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 1126, 89 L.Ed.2d 390 (1986).

Before this Court, appellant concedes that the Government established that military necessity justified the presence of Lieutenant Commander Klich on board ship during refresher training. Appellant also "concedes" that it was likely "the time period for the training evaluation was so fixed by other factors that it was set in concrete." Appellant does not concede, however, that the unavailability of the witness extended to the time the deposition was offered at trial.

The second basis for unavailability cited by trial counsel, the "100-mile" rationale, was rejected as the sole justification for unavailability of a military witness in United States v. Davis, 19 U.S.C.M.A. 217, 41 C.M.R. 217 (1970). Writing for a majority of the Court, Judge Ferguson stated as follows:

We believe that to allow the one hundred mile clause of Article 49(d)(1), Code, supra, standing alone, to control the admissibility of depositions might result in their routine admission in many courts-martial in derogation of the principle that depositions are an exception to the normal rule of live testimony. We hold, therefore, that with regard to military witnesses, the right of confrontation as embodied in military due process requires that actual unavailability be established before a deposition of a serviceman is admitted into evidence.

Id. at 224, 41 C.M.R. at 224.

■ In determining whether to admit the deposition of a witness who is temporarily unable to be present for trial, the military judge should consider all circumstances of the case,

includ[ing] the importance of the testimony, the amount of delay necessary to obtain the in-court testimony, the trustworthiness of the alternative to live testimony, the nature and extent of earlier cross-examination, the prompt administration of justice, and any special circumstances militating for or against delay.

United States v. Cokeley, 22 M.J. at 229.

■ The military judge's determination of unavailability is subject to review for abuse of discretion. United States v. Faison, 679 F.2d 292 (3d Cir.1982); United States v. Flores-Amaya, 533 F.2d 188 (5th Cir.1976), cert. denied, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). Unfortunately, the military judge here did not articulate any weighing of relevant considerations or explain his reasons for admitting the deposition. Thus, appellate review of the soundness of his exercise of discretion is severely hampered.

■ When offering the deposition on November 29, trial counsel represented to the military judge that the witness was on board ship and that the ship was still in training.[3] In addition to factual representations, however, trial counsel went on to ask the military judge to infer that the presence of the witness on board was still

---

**3.** Although the military judge acted within his discretion in accepting the undisputed representations of counsel in this regard, United States v. Sindona, 636 F.2d 792 (2d Cir.1980), cert. denied, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981), the preferred procedure is to require a stipulation, affidavits, or evidence. United States v. Stubbs, 23 M.J. 188, 195 (C.M.A.1987).

essential. By this time, the ship was nearing completion of its training period, and the presence of the witness on board may no longer have been a matter of "military necessity." Because the information provided to the military judge was not current, the actual unavailability of the witness at the time the deposition was offered into evidence was not established. *Cf. Burns v. Clusen,* 798 F.2d 931, 943 (7th Cir.1986) (Government's burden to establish "unavailability is a continuing one").

Moreover, it is clear that the refresher training had been scheduled for months and was known well in advance by trial counsel. In spite of this, there appears to have been no accommodation made in setting the date of trial so the witness could testify before the factfinder. Certainly, the record provides no explanation why trial could not have commenced earlier or concluded later so the temporary unavailability of the witness would not have necessitated resort to "a weaker substitute for live testimony." *United States v. Inadi,* 106 S.Ct. at 1126. *See United States v. Rothbart,* 653 F.2d 462 (10th Cir.1981). In fact, trial on the merits concluded on November 30—only 2 days before the claimed unavailability period was to end.

We conclude that the military judge abused his discretion in determining Lieutenant Commander Klich was unavailable to testify at trial based on the sparse and stale facts before him. However, automatic reversal does not follow. Even constitutional error may not require reversal if harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Burns v. Clusen, supra. See Delaware v. Van Arsdall, supra,* 106 S.Ct. 1431. The inquiry is whether the error was harmless in light of

> a host of factors, ... includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-ex-

amination otherwise permitted, and, of course, the overall strength of the prosecution's case. [Citations omitted.]

*Delware v. Van Arsdall, supra* at 1438.

The Government's case rested primarily on the testimony of Rainville, who provided the only direct evidence of the offenses. The relationship between appellant and Rainville surfaced after Rainville left his diary unlocked on a table in his work spaces. Already suspicious that Rainville was a homosexual, Rainville's supervisor took the opportunity to read the diary, which detailed Rainville's sexual adventures with appellant. The defense attempted to impeach Rainville by showing that he was unworthy of belief and that the incidents in his diary were fantasies.

Along with the diary, the prosecution introduced the testimony of Lieutenant Commander Klich and four other members of the crew of the ship to corroborate details of Rainville's testimony. These witnesses corroborated that appellant socialized with Rainville, showed favoritism to Rainville, and accepted personal gifts from him. Further, Rainville and appellant had the opportunity to commit the offenses at the times Rainville testified they occurred. Rainville was often seen in appellant's cabin and was once seen leaving appellant's cabin late at night. On two occasions, appellant interceded on behalf of Rainville to prevent him from getting into trouble for his derelictions.

The testimony of Lieutenant Commander Klich corroborated some collateral details provided by Rainville. However, his testimony consisted primarily of observations that were cumulative of the testimony of other witnesses from the crew. Appellant's steward, who was in and out of appellant's cabin frequently, provided corroboration of Lieutenant Commander Klich's testimony on material points.

Appellant had the opportunity, which was exercised extensively by his counsel, of meaningfully cross-examining the witness during the taking of the deposition. Unlike the situation in *Cokeley,* where the witness was deposed at the beginning

stages of the criminal investigation, the witness here was deposed well after the Article 32, UCMJ, 10 U.S.C. § 832, investigation and just before trial. Thus the witness, under oath, did "submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), quoting 5 J. Wigmore, *Evidence* § 1367 (3d ed. 1940). Furthermore, it is doubtful that appellant actually desired to confront the witness at trial. We note that the defense did not request a continuance until such time as Lieutenant Commander Klich was available to testify in person. *Cf. United States v. Cokeley, supra.* Although a videotape existed, the defense did not request to play any portion of it before the trier of fact for demeanor purposes.

We are persuaded, as was the Court of Military Review, that the evidence convincingly "excludes any fair and rational hypothesis except that of guilt." Unpub. op. at 2. After a careful examination of the record, we are convinced that any error in admitting the deposition was harmless.

## II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY DENYING THE DEFENSE MOTION TO PRODUCE THE NOTES OF INTERVIEWS BY THE TRIAL COUNSEL AND NAVAL INVESTIGATIVE SERVICE AGENT WITH THE KEY GOVERNMENT WITNESS.

In an attempt to further corroborate Rainville's story, a Naval Investigative Service (NIS) agent searched fruitlessly in Tunis for the hotel where Rainville alleged that one of the sodomy incidents occurred. At the first session of trial on November 2, defense counsel moved for discovery of the notes of interviews with Rainville which formed the basis of the description with which the NIS agent worked. Defense counsel contended that the notes might be helpful to the defense in impeaching Rainville. The notes were obtained in trial preparation interviews with Rainville by trial counsel, assistant trial counsel, and NIS Special Agent Chester Wells, who was present at counsel table and apparently was assigned to assist trial counsel after the Article 32 investigation.

Trial counsel stated that the Government would concede in its case-in-chief that no corroboration concerning the hotel in Tunis had been found. Further, he represented that the Government had "already disclosed to the defense the essence of the detail that Rainville provided." Based on interviews with Rainville, action lead sheets had been prepared and forwarded to the investigating agents in the field. The defense had been provided the action lead sheets and the NIS reports of the investigation in Tunis, copies of which were shown to the military judge. Trial counsel maintained that all information provided by Rainville concerning the hotel was in the lead sheets and that the notes themselves were the prosecution's personal work product and not discoverable.

Defense counsel then questioned why he could not be provided the notes "if, in fact, they did include within the lead sheet everything ... [Rainville] said about those descriptions." The military judge responded, "Well, he's an officer of the court, he makes that representation and I'll accept it." Without further ado, the defense request was denied.

■ Interview notes prepared by a lawyer or his representative are not automatically excluded from discovery by the defense on the basis that the notes are work product. When a writing that relates to the subject matter of the testimony of a government witness has been "signed or otherwise adopted or approved by" the government witness, it is producible under the Jencks Act even though the writing was prepared by the government lawyer who interviewed the witness. Goldberg v. United States, 425 U.S. 94, 97, 96 S.Ct. 1338, 1341–42, 47 L.Ed.2d 603 (1976). The Jencks Act, 18 U.S.C. § 3500, is not applicable in this case, however, as there is nothing in the record to indicate that Rainville "adopted or approved" notes taken by the prosecution team in regard to his description of the hotel in Tunis.

Appellant bases his entitlement to the notes on the broad discovery rights available to a military accused by virtue of Article 46, UCMJ, 10 U.S.C. § 846. Unquestionably, military discovery practice is more "liberal" in many respects than federal practice. *See* Analysis to R.C.M. 701, p. A21–29, Manual for Courts-Martial, United States, 1984; paras. 34, 44*h*, and 115*c*, 1969 Manual, *supra.* When the defense requests documentary evidence, it will generally be provided upon a showing "that the material is relevant ... and that the request ... is reasonable." *United States v. Toledo,* 15 M.J. 255, 256 (C.M.A.1983); *United States v. Franchia,* 13 U.S.C.M.A. 315, 32 C.M.R. 315 (1962).

Even though liberal, discovery in the military does not "justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). *See* R.C.M. 701(f), 1984 Manual, *supra.* In *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court applied the attorney work-product doctrine to criminal cases and held that, when an investigator who was part of the defense team takes the stand to contrast his recollection of an interview with that of an opposing witness, the work-product privilege is waived with respect to matters covered in the investigator's testimony.

In this case, the Government did not waive the work-product privilege, as neither Agent Wells, trial counsel, nor assistant trial counsel testified. Appellant has shown no necessity to justify production of the notes of the trial team as to oral statements made by Rainville. As explained in *Hickman:*

> Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

329 U.S. at 512–13, 67 S.Ct. at 394.

The military judge could have requested to see the notes for an inspection before ruling on the motion. Requiring material sought for discovery to be submitted to the court for inspection is a sound practice that protects the rights of all concerned and aids in appellate review. However, the defense did not request that the judge inspect the notes.

In any event, it is difficult to envision how "the outcome of the trial" could have been "affected" by denial of the defense request. *See United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). As trial counsel persuasively pointed out to the military judge, "Obviously, we're going to put all the detail in the action lead sheets because we want the investigating agents to know what the man is claiming so that they can spot corroborating details." Indeed, the Government's inability to corroborate the hotel incident in spite of the detailed description provided by Rainville enabled the defense to argue, albeit unsuccessfully, that Rainville was fantasizing the entire episode. We find no abuse of discretion in the ruling of the military judge.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring):

I am disturbed by the erroneous reception in evidence of a deposition, which, as transcribed, exceeded 125 pages. Nonetheless, after reviewing the deposition and the other evidence in the record, I am persuaded that the experienced military judge who tried appellant would have reached the same findings even if Klich's deposition had been excluded as inadmissible.